**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SUMMERWOOD VILLAS, A CONDOMINIUM OWNER'S ASSOCIATION, INC.** | * * | **CIVIL ACTION NO: 3:25-cv-00248-JWD-RLB** |
| | * | **JUDGE JOHN W. DEGRAVELLES** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE** |
| **AMGUARD INSURANCE COMPANY** | * | **RICHARD L. BOURGEOIS, JR.** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**AMGUARD INSURANCE COMPANY'S REPLY BRIEF**
**IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant AmGUARD Insurance Company ("AmGUARD") continues to urge this Court to grant summary judgment and dismiss plaintiff Summerwood Villas, A Condominium Owner's Association's ("Summerwood Villas") claims of breach of contract and insurance bad faith.

Summerwood Villas does not and cannot dispute that its corporate representative,[1] its longtime roofer,[2] and its property manager[3] each testified they never witnessed hail or wind damage to the plaintiff's roofs in 2023. The opposition effectively concedes that the alleged hailstorm has caused no water intrusion at the property, and Summerwood Villas identifies no evidence in its opposition showing the plaintiff's roofs have failed or will fail because of the alleged hail damage within the six years remaining on the roofs' shingles (which the plaintiff's corporate representative testified were designed for twenty-five years[4] and installed by 2007).[5] And as for wind damage,

---

1 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 81:21-22 ("I didn't see the hail damage. I saw hail that fell."); *accord id.* at 82:9-12 ("[Y]ou have not personally observed hail damage to shingles, correct? A. That's correct.").

2 Rec. Doc. 32-4, 30(b)(6) Dep. of Jarreau Roofing at 107:11-13 ("So, as far as, like, at Summerwood Villas was there a hailstorm in 2022 or 2023, not that I know of for certain."); *accord id.* at 112:10-13 ("Q. . . . As to wind, are you aware of a wind event causing any damage to the Summerwood Villas' roofs on either June 2023 or August of 2023? A. I'm not familiar with that, no.").

3 Rec. Doc. 32-5, 30(b)(6) Dep. of Community Management 98:6-13 ("Q. Community Management is not a aware if there was a hail event in 2023 at Summerwood Villas' property? A. No.").

4 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 55:17-22.

5 *Id.* at 54:17-21; *accord id.* at 56:15-19.

Summerwood Villas has no knowledge of wind damage to its roofs in 2023.[6] The plaintiff's own proposed causation expert Neil Hall not only panned the plaintiff's wind claim as "throwaway wind damage,"[7] Hall effectively conceded he could not attribute the observed wind damage to any of the alleged dates of loss Summerwood Villas has peddled to date in this lawsuit.

The opposition fails to even offer a denial, explanation, or rebuttal of the testimony from plaintiff's corporate representative that: "I have no idea that we have any roof issues other than the roof jack issues."[8] Nor does the opposition tackle plaintiff's testimony that spot repairs to the plaintiff's roofs have been performed since August 2023 and can be performed today.[9] Three years later and with the benefit of hindsight, lawyers, and proposed experts, Summerwood Villas *still* cannot commit in writing to a number, date, or the kind of weather events that allegedly damaged the property[10]—let alone put forward facts showing that the disputed "hail damage" is not excluded under the policy's cosmetic hail damage endorsement, that the "throwaway wind damage" exceeds the policy's deductibles, or identify any undisputed amount of alleged damage caused by an August 2, 2023 weather event and covered under the policy.

The undisputed admissions by Summerwood Villas, its longtime roofer, and its property manager warrant the dismissal of each of plaintiff's claims on summary judgment.

## I. The Opposition Misstates the Opinions of Its Own Experts and Its Property Manager.

Rather than explain how the admissions made by plaintiff's corporate representative permit Summerwood Villas to avoid dismissal, the opposition seeks to dodge summary judgment by

---

6 *Id.* at 108:23-109:1 (Q. "[D]oes Summerwood Villas have knowledge of a wind event occurring in 2023 that damaged the roofs at Summerwood Villas? A. No.").

7 Rec. Doc. 32-6, Dep. of N. Hall at 100:6-101:3.

8 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 175:19-176:2.

9 *Id.* at 133:11-22, 134:20-136:20.

10 Rec. Doc. 47 at 2 ("The property received significant damage from windstorm(s) and/or hailstorm(s) within the policy period.").

attacking Mr. Jarreau's roofing credentials and mischaracterizing the opinions of Summerwood Villas' property manager Community Management and its proposed litigation experts Neil Hall and Jeremy Belk who first visited the property in 2026 and lack basic knowledge about the property.

The opposition misstates key aspects of the opinions of Hall and Belk. For example, contrary to plaintiff's representations,[11] Hall testified that he could not attribute the wind damage he observed on the Summerwood Villas roofs to the alleged August 2, 2023 storm. Hall admitted he cannot say "what the date of loss is for those [wind-damaged] shingles:"

> That said, it's -- it's -- ***you have numerous wind events that could potentially have caused the removal of -- what are we saying? I think about 80 shingles came off this roof***. That's 80 shingles on, what, 16 buildings? So that's going to be five shingles per roof that came off. That's one reason I didn't spend a lot of time looking at the wind damage. I can tell after one or two roofs, if there's only five missing shingles per roof, let's key on the hail. Let's not key on the wind.
>
> . . .
>
> For that handful of shingles, ***I'm not going to tell you what the date of loss is for those shingles***.

(Rec. Doc. 32-6, N. Hall Dep. at 88:24-89:21) (emphasis added). Similarly, Belk did not—as the opposition represents—conclude "the home was exposed to a storm event on August 2, 2023, that caused severe damage to the surrounding areas."[12] Belk testified he does not know when the roof conditions he observed occurred,[13] disclaims having any causation opinions,[14] failed to investigate the condition of the Summerwood Villas' roofs before 2023,[15] did not gather any weather data,[16]

---

[11] Rec. Doc. 47 at 4.

[12] *Id.* at 5.

[13] Rec. Doc. 32-26, Dep. of J. Belk at 50:4-5 ("Q. But you don't know which storm event? A. Correct.").

[14] *Id.* at 8:22-9:14 ("A. . . . I wasn't hired for causation . . . Q. Okay. So you -- but you don't have a -- an independent -- you -- an independent causation opinion, right? A. In this one, I was just writing the estimatics [*sic*] based on storm-related damage, not what specific damage.").

[15] *Id.* at 55:2-14 ("Q. Did you do any investigation into what the condition of this roof was in 2022? A. No. Q. Did you do -- did you do any research about the sort of pre-2023 condition of the roof? A. I did not.").

[16] *Id.* at 36:8-23.

and did not investigate the accuracy of the alleged August 2023 date of loss.[17]

The opposition also mischaracterizes the testimony of plaintiff's property manager Community Management.[18] Summerwood Villas represents that "Plaintiff's property manager also testified that its understanding of why the insurance claim was filed was because the roofs were damaged by a storm, multiple units experienced leaks and as a result Plaintiff retained Topside Roofing."[19] The Community Management corporate representative explicitly disclaimed, however, any knowledge of a storm causing the submission of the insurance claim at issue:

> Q. You don't know -- does Community Management have any opinion as to whether or not there was a specific storm that triggered the, the sort of insurance claim?
>
> A. I don't -- I don't know.
>
> Q. Okay. Does Community Management know one way or the other, whether there was a specific hail event that triggered the insurance claim?
>
> A. I don't know. I wouldn't be able to tell you.
>
> Q. Does Community Management know whether there's a specific wind event that triggered the insurance claim?
>
> A. I don't know.

(Rec. Doc. 32-5, Community Management Dep. at 37:1-14). The property manager did not, as the opposition suggests, take the position that the "roofs were damage[d] in a storm."[20] When asked whether Community Management has a position on whether "there was a storm" or "whether there

---

17 *Id.* at 40:13-41:1 ("But otherwise, whether it's weather data or not weather data, you did not go about independently determining that 8/2/2023 is the date of loss, correct? A. Correct").

18 Rec. Doc. 32-5, 30(b)(6) Dep. of Community Management 98:6-13 ("Q. Community Management is not a aware if there was a hail event in 2023 at Summerwood Villas' property? A. No. Q. Summerwood -- Community Management is not aware whether there was a wind event in 2023 at Summerwood Villas' property? A. No.").

19 Rec. Doc. 47 at 9.

20 Rec. Doc. 47 at 11.

was damage," Community Management testified: "No."[21]

And as for Jason Jarreau, Summerwood Villas' longtime roofer, plaintiff's corporate representative testified it had no complaints about Mr. Jarreau's roofing work.[22] Mr. Jarreau has a lifetime of roofing experience, owned his own business since 2008, and is the fourth generation in his family to own a roofing company.[23] Mr. Jarreau, as plaintiff admitted, is the "one and only" roofer who performed work at the Summerwood Villas property in the years before 2023 and Summerwood Villas has "stayed with Jarreau Roofing all the way through."[24] Summerwood Villas cites no record evidence disputing the truth of Mr. Jarreau's testimony that the exhaust vents were improperly installed[25] or that cracks to the improperly installed[26] dryer vents and plumbing boots[27] were widespread.[28] Nor did the opposition ever cite any record evidence disputing that the roofs were worn, "leaking a lot,"[29] "deteriorating," and suffering from "mystery leaks"[30] and the "improper installation" of vents"[31] and boots.[32] AmGUARD's properly supported facts of the deteriorated condition of the Summerwood Villas' roofs before June 2023 must be deemed admitted.

## II. The Plaintiff's Admission Establish No Coverage as a Matter of Law.

The Summerwood Villas' opposition does not deny the alleged hail event has caused no water intrusion into the Summerwood Villas units[33] or that plaintiff admitted it has no knowledge

---

21 Rec. Doc. 32-5, Community Management Dep. at 43:6-20.
22 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 67:17-68:9.
23 Rec. Doc 32-4, Jarreau Roofing Dep. at 24:4-20.
24 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 91:13-22.
25 Rec. Doc. 32-4, Jarreau Roofing Dep. at 68:6-9.
26 *Id.* at 69:11-16.
27 *Id.* at 71:15-19.
28 *Id.* at 67:7-14.
29 *Id.* at 104:9-15; *see id.* at 96:10-13.
30 *Id.* at 104:20-23.
31 *Id.* at 104:9-17.
32 *Id.* at 86:5-15.
33 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 140:18-24.

of a wind event damaging its roofs in 2023.[34]

The plaintiff admitted it never witnessed hail damage to the roofs,[35] and conceded it was not aware of any personal property damage from the alleged hail event: no gutters damaged, no fences damaged, no AC units damaged.[36] The opposition similarly does not dispute the policy excludes cosmetic hail damage.[37] Nor does the opposition rebut the summary judgment evidence showing that—even if this Court were to credit the testimony of plaintiff's proposed causation expert Neil Hall—no coverage applies to the disputed cosmetic hail damage described by Hall. Hail damage that does not result in "the failure of the roof covering to perform its intended function of keeping out the elements for the remainder of its original, useful life" is not covered.[38] Hall joined the plaintiff in testifying that the alleged hail damage has caused no water intrusion to date.[39]

Specifically, the Summerwood Villas' corporate representative disclaimed knowledge of a hail event from August 2023 causing any water damage:

> Q. . . . Within a year of the August 2023 alleged hail event, is Summerwood Villas aware of hail damage causing the penetration of water into the units?
>
> A. That's what I'm not aware of. I'm not aware of that, unless something is going on in the last couple of months, two or three months.[40]

---

34 *Id.* at 108:23-109:1 (Q. "[D]oes Summerwood Villas have knowledge of a wind event occurring in 2023 that damaged the roofs at Summerwood Villas? A. No.").

35 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 81:21-22 ("I didn't see the hail damage. I saw hail that fell."); *accord id.* at 82:9-12 ("[Y]ou have not personally observed hail damage to shingles, correct? A. That's correct.").

36 *Id.* at 83:13-84:2.

37 Rec. Doc. 32-17, Certified Policy No. SUBP372398 at AmGUARD_000153.

38 *Id.*

39 Rec. Doc. 32-6, Dep. of N. Hall at 127:16-128:12 ("There's -- there was no penetration through the hail damage on the date of loss . . . Q. But it hasn't happened, to your knowledge, as of today? A. That is correct.").

40 *See* Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 140:18-24 (Q. "Within a year of the August 2023 alleged hail event, is Summerwood Villas aware of hail damage causing the penetration of water into the units? A. That's what I'm not aware of. I'm not aware of that, unless something is going on in the last couple of months, two or three months.").

At most, the opposition relies on Hall's speculative testimony that "penetration of water 'will definitely happen within the next 13 years.'"[41] But 13 years is ***seven years past the original, useful life*** of the Summerwood Villas' shingles. The plaintiff's corporate representative testified that the Summerwood Villas shingles were designed for twenty-five years[42] and installed on or before 2007.[43] Hall's speculative testimony that water intrusion "will definitely happen within the next 13 years" does not create a genuine issue of material fact over whether the disputed, alleged hail damage will cause "the failure of the roof covering to perform its intended function of keeping out the elements for the remainder of its original, useful life."

Because plaintiff admitted that it has no knowledge of a 2023 wind storm damaging its roofs and no awareness of the failure of the Summerwood Villas' roofs to perform its intended function of keeping out the elements, plaintiff's breach of contract claim fails as a matter of law.

**III. The Topside Roofing ghostwritten estimate is still not satisfactory proof of loss.**

The opposition also provides no facts or law to support its claim that the $4.2 million estimate ghostwritten in December 2023 by Chris Yancey (who has no affiliation with Topside Roofing) under Topside Roofing's name constitutes satisfactory proof of loss under Louisiana law.

The author of the ghostwritten and disputed estimate, Mr. Yancey, testified that the estimate at issue was a mere "sample" or "starting point,"[44] not intended to be submitted to AmGUARD,[45] and drafted as a favor to Topside Roofing because—according to Mr. Yancey—"they don't know what they're doing."[46] Topside Roofing, at that time, was new to the roofing

---

41 Rec. Doc. 47 at 13.

42 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 55:17-22.

43 *Id.* at 56:16-19.

44 Rec. Doc. 32-16, Dep. of C. Yancey at 101:2-9, 135:24-136:8.

45 *Id.* at 45:9–46:16 ("[B]asically this was an outline, you know, that I was giving him. This was never meant to be anything other than -- other than that. That's why I didn't, you know, stamp it with my name or anything like that.").

46 *Id.* at 21:19–22 ("They have decided to go into roofing, and they don' t know what they're doing, and he

industry, needed "hand-holding,"[47] and lacked credentials to the Xactimate estimating software.[48] Mr. Yancey knew nothing about the condition of the roofs before he inspected a few of the condominium's roofs in late 2023.[49] Nowhere in the opposition does plaintiff dispute that Topside Roofing lacked qualifications in December 2023, that its author Mr. Yancey's lacked basic knowledge about the property, or that the $4.2 million estimate was ghostwritten and panned by its author Mr. Yancey as a mere "sample."[50]

The estimate contains a date of loss that plaintiff admits was false,[51] misnumbers the building numbers,[52] and—according to Topside Roofing—is based on an inspection of only one of the sixteen Summerwood Villas buildings.[53] The $4.2 million estimate is not satisfactory proof of loss; it is a disputed estimate riddled with false assumptions and errors.

## IV. AmGUARD Cannot Be in Bad Faith Because any Failure to Pay was Not "Arbitrary, Capricious, or Without Probable Cause" Because Plaintiff's Longtime Roofer Agrees with AmGUARD's Consultants' Findings of No Hail and Minimal Wind Damage.

Summerwood Villas did not and cannot carry its burden of proving that there is a genuine issue of material fact over whether AmGUARD adjusted the claim in good faith. The opposition wrongly accuses AmGUARD of using the wrong deductibles, without explanation or identifying the allegedly correct deductibles.[54] The opposition also carps that Haag's professional engineer Andrew Lynch, an engineer licensed in Louisiana, has a background in electrical engineering.[55]

---

needs some help. And I said okay.").

47 *Id.* at 124:2-8.

48 *Id.* at 40:10-11.

49 *Id.* at 68:19–21.

50 *Id.* at 101:2-9, 135:24-136:8.

51 *E.g.*, Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 107:4-8.

52 Rec. Doc. 32-28, 30(b)(6) Dep. of Topside Roofing at 37:22-38:12.

53 *Id.* at 33:8-20 ("Q. But before the claim was filed, the only building that Topside Roofing had physically inspected was building number nine? A. Yes.").

54 Rec. Doc. 47 at 14-15.

55 Rec. Doc. 47 at 12.

Even if the plaintiff could prove that Mr. Lynch has a background in electrical engineering, nothing about electrical engineering discredits Mr. Lynch's qualifications to inspect the Summerwood Villas' roof or changes the fact that each of Mr. Lynch's findings that AmGUARD adjuster Robert Null contemporaneously cited to adjust the claim have been confirmed in discovery:

| Haag Findings & AmGUARD Analysis | Confirmation of Haag Findings in Discovery |
|---|---|
| "The inspection found no hail or wind damages to the elevations including the siding or window."[56] | Plaintiff's proposed causation expert Neil Hall did not observe "any downspout dents, window screens tears, or flattened condenser fins."[57] |
| "No hail or wind damages to the gutter system."[58] | Plaintiff did not observe the gutters being damaged by hail damage or wind damage.[59] |
| "No hail damages found to any metal on the roofing system."[60] | Plaintiff disclaimed "the soft metals [being] damaged by hail or wind in 2023."[61] |
| "There are multiple areas of shingles that were repaired prior, multiple units with damages from tree branches scraping on the shingles and some areas ripped or torn shingles from the windstorm."[62] | Plaintiff agreed spot repairs had been performed on the roofs before 2023, including replacing shingles.[63] |
| "The roofing shingles have normal wear and tear and granular loss in the fields as noted."[64] | Plaintiff's longtime roofer Jason Jarreau testified that "granule loss was [not] caused by hail"[65] and that, ever since he had been working on the roofs, the Summerwood Villas roofs were shedding granules.[66] |
| "These roofs are not damaged to a full replacement level and has multiple large areas of prior repairs."[67] | Plaintiff does not dispute spot repairs can be performed.[68] Plaintiff's longtime roofer Jason Jarreau also denied that the condition of plaintiff's roofs changed between May 2023 and |

56 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001464.

57 Rec. Doc. 32-12, Excerpt from Neil Hall Building Damage Assessment at HALL_000690.

58 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001464.

59 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 83:25-84:2, 132:1-3.

60 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001464.

61 Rec Doc 32-3, 30(b)(6) Dep. of Summerwood Villas at 111:25-112:3.

62 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001464.

63 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 133:11-22; *accord* Rec. Doc. 32-4, 30(b)(6) Dep. of Jarreau Roofing at 75:16-76:7.

64 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001464.

65 Rec. Doc. 32-4, 30(b)(6) Dep. of Jarreau Roofing at 78:3-8.

66 *Id.* at 108:17-110:2.

67 Rec. Doc. 32-37, Excerpt from March 28, 2024 Email to Jason Martin at AmGUARD_001465.

68 Rec. Doc. 32-3, 30(b)(6) Dep. of Summerwood Villas at 134:20-136:20.

| | |
|---|---|
| | September 2023,[69] testified that he never recommended a roof replacement,[70] and confirmed the roofs can be spot repaired today.[71] |

Summerwood Villas disagrees with the conclusions of AmGUARD's adjuster and consultants, but such a simple disagreement is not grounds for a bad-faith claim. The opposition identifies no facts or law to rebut that black-letter Louisiana law. There is no evidence that AmGUARD acted arbitrarily or capriciously, and plaintiff's bad-faith claim should thus be dismissed with prejudice.

## CONCLUSION

Three years later and with the benefit of hindsight, lawyers, and proposed experts, Summerwood Villas *still* cannot commit in writing to a number, date, or the kind of weather events that allegedly damaged the property[72]—let alone put forward facts showing that the disputed "hail damage" is not excluded under the policy's cosmetic hail damage endorsement, that the "throwaway wind damage" exceeds the policy's deductibles, or identify any undisputed amount of alleged damage caused by an August 2, 2023 weather event and covered under the policy. And if plaintiff cannot get its story straight or answer basic questions about its claim, including who filed the claim on its behalf, when its roofs sustained damage, or the extent or cause of the damage, AmGUARD cannot be in bad faith for reasonably disputing the claim. The Court should grant summary judgment in favor of AmGUARD and dismiss plaintiff's claims with prejudice.

Respectfully submitted,

*/s/ Lance W. Waters*
John W. Joyce, 27525
Lance W. Waters, 37351

---

69 Rec. Doc. 32-4, 30(b)(6) Dep. of Jarreau Roofing at 129:21-24.

70 *Id.* at 34:14-16.

71 *Id.* at 65:2-8.

72 Rec. Doc. 47 at 2 ("The property received significant damage from windstorm(s) and/or hailstorm(s) within the policy period.").

Laura M. Blockman, 40705
Samuel P. Martin, 39971
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
jjoyce@barrassousdin.com
lwaters@barrassousdin.com
lblockman@barrassousdin.com
smartin@barrassousdin.com

*Attorneys for defendant AmGUARD Insurance Company*